UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CRIMINAL NO. 13-20349

v.        HON. ARTHUR J. TARNOW

RAJESH DOSHI,

        Defendant.
_____/

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
EMERGENCY MOTION FOR COMPASSIONATE RELEASE [DKT.147]**

    The Defendant's motion for compassionate release should be denied because he has not yet exhausted his administrative remedies, as required by statute. Furthermore, he is not a good candidate for compassionate release due to his comparatively safe conditions at FCI Morgantown, as contrasted against his home of Detroit, Michigan.

## BACKGROUND

    The Defendant was the leader and organizer of a complex scheme to defraud Medicare. This scheme was implemented over the course of seven years, through various corporate entities owned and operated by the Defendant (but with corporate documents designed to conceal his ownership) purporting to provide home health services such as physical therapy and skilled nursing. In reality, these entities were

1

processing fraudulent, falsified paperwork for patients who never received services, who were obtained through bribes and kickbacks, and/or who never qualified for services to begin with. The cost of these illusory services was then passed on to Medicare, which reimbursed the Defendant's sham entities on the basis of those falsified patient files. The Defendant falsified and directed others to falsify documents in support of this scheme, which ultimately resulted in the submission of approximately $13 million in fraudulent claims for reimbursement to Medicare. This was the second fraudulent scheme engaged in by the Defendant; previously, he had been convicted of Medicaid Fraud in Michigan state court.

On November 14, 2014, the Defendant pleaded guilty to Conspiracy to Commit Health Care Fraud, in violation of Chapter 18, United States Code, Section 1439, and Health Care Fraud, in violation of Chapter 18, United States Code, Section 1347. On October 24, 2016, this Court sentenced the Defendant to 84 months imprisonment. On November 30, 2018, after a number of delays in his report, the Defendant began serving his sentence at FCI Morgantown. He has currently served just over 20% of his total sentence.

On March 27, 2020, the Defendant filed a motion requesting that this Court recommend him for home confinement under the Bureau of Prisons' authority derived from Chapter 18, United States Code, Section 3624(c)(2). [Dkt. 143]. This Court granted the recommendation, but on April 3, 2020, BOP notified the Court

that it would not be placing the Defendant on home confinement at that time. [Dkt. 146]. The Defendant now moves for compassionate release, pursuant to Chapter 18, United States Code, Section 3582(c)(1)(A)(i). [Dkt. 147].

## ARGUMENT

The Defendant's request is unripe and may not be granted by this Court because he has failed to exhaust his administrative remedies first. Chapter 18 United States Code section 3582 affords inmates the right to seek compassionate release on their own motion only if they have first requested compassionate release and exhausted their administrative remedies with the Bureau of Prisons (BOP), or waited 30 days in the event the BOP fails to act on their request. 18 U.S.C. § 3582(c)(1)(A).

In addition, a court may only grant compassionate release based on "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A). This analysis must be consistent with the Sentencing Commission's policy statement and the factors set forth in 18 U.S.C. § 3553. USSG § 1B1.13(1)(A), (2), (3); *United States v. Hamilton*, 715 F.3d 328, 327 (11th Cir. 2013). This Defendant should not be granted relief because he has neither exhausted his remedies, nor demonstrated that his circumstances are sufficiently "extraordinary" as to require release.

### I. The Defendant Has Not Exhausted Administrative Remedies.

Before an inmate moves for compassionate release in court, he "must at least ask the Bureau of Prisons[] to do so on [his] behalf and give BOP thirty days to

3

respond." *United States v. Raia*, 954 F.3d 594, 596-97 (3d Cir. 2020) (opinion amended on Apr. 8, 2020). In this instance, the Defendant made a request to BOP on April 14, 2020. Ex. A, Email from Doshi to Tompkins (Apr. 14, 2020). The Defendant must complete this process prior to resorting to this Court for relief.

### A. Administrative Exhaustion is Mandatory.

Statutory exhaustion requirements, like the one in § 3582(c)(1)(A), are mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1855–57 (2016). Those requirements may not be excused, even to account for "special circumstances." *Id.* Rather, as a judge in this district recently held, "[t]he text of 18 U.S.C. § 3582(c) defines mandatory conditions precedent to a defendant filing a motion [for compassionate release] under that section." *United States v. Alam*, No. 15-20351, at 4 (E.D. Mich. Apr. 8, 2020). The Defendant argues that exhaustion is waived for him, because administrative proceedings would be futile and would subject him to undue prejudice. Def.'s Mot. 3-4. This argument is at odds with this district's precedent, and furthermore is not supported by the facts here. *See, e.g.*, *United States v. Mathews*, No. 14-cr-20427-02, 2020 WL 1873360 (E.D. Mich. Apr. 15, 2020) (distinguishing judicially created exception in *Washington v. Barr*, 925 F.3d 109 (2d Cir. 2019) from statutory foreclosure of exception in Section 3582(c)(1)).

4

## B. Administrative Exhaustion is Not Futile.

The Defendant's argument that an administrative request for compassionate release would be futile, based on the BOP's response to this Court's prior recommendation for home confinement, is inapposite. Compassionate release and home confinement are two different types of relief, authorized by two different statutes, with different standards. *Compare* 18 U.S.C. § 3582(c)(1)(A)(i); 18 U.S.C. § 3624(c)(2). The Court's prior recommendation – and the BOP's negative response – related only to home confinement pursuant to Section 3624(c)(2), whereas the Defendant's current motion requests compassionate release pursuant to Section 3582(c)(1)(A)(i). The BOP response on one type of relief simply cannot be taken as determinative of the other. Furthermore, the BOP response was provided on April 3, 2020, and was limited to its decision as to home confinement "at this time." [Dkt. 146]. Now, a full month later, with circumstances changing every day, the Defendant cannot take that dated response as an indicator of BOP's current position on an entirely different type of relief.

The only way for the Defendant and this Court to discover the BOP's position on compassionate release is for him to inquire through administrative avenues, as contemplated by the statute. Indeed, the Defendant's position taken in briefing that a "second request" would be futile is at odds with the fact that he has, in fact, submitted a request to BOP for compassionate release consideration. On April 14,

5

2020, the Defendant submitted a "Request to Staff" asking for the very relief he now asks this Court to grant. Ex. A. As of the date of this filing, 20 days have elapsed and BOP has not yet provided a response. In other words, the Defendant is only ten days away from having satisfied the exhaustion requirement – and conceivably even obtaining relief – through the BOP.

### C. Administrative Exhaustion Will Not Unduly Prejudice This Defendant.

While the Defendant may be concerned that "any further delay" will create undue prejudice due to his medical vulnerability to COVID-19, the unfortunate reality is that some amount of delay is always inherent in an exhaustion requirement. This does not automatically mean that the delay is unduly prejudicial, or that this Court may bypass the requirement. *See, e.g.*, *United States v. Reeves*, No. 18-cr-00294, 2020 WL 1816496 (W.D. La. Apr. 9, 2020) (requiring administrative exhaustion for 69-year-old prisoner with diabetes, hypertension, high cholesterol, and history of triple bypass); *United States v. McCann*, No. 13-cr-52, 2020 WL 1901089 (E.D. Ky. Apr. 17, 2020) ("[I]n such a context [as COVID-19], the exhaustion requirement of the compassionate release statute is perhaps most important."). The prejudice contemplated by the Defendant is based on the fact he *might* contract COVID-19 during the intervening time. Yet the facility at which he is incarcerated (FCI Morgantown) is presently reporting no cases of COVID-19

6

among any prisoners or staff members. *See* BOP: COVID-19 Update, bop.gov/coronavirus/ (May 4, 2020). His concerns that he may contract COVID-19 while waiting on administrative action at this facility are therefore merely speculative and cannot sustain a waiver of administrative exhaustion.

The Defendant's failure to exhaust administrative remedies prior to requesting relief from this Court is fatal to his claim. As the Third Circuit held recently in denying a similar, unexhausted motion for compassionate release, the COVID-19 pandemic does not permit inmates or district judges to bypass § 3582(c)(1)(A)'s exhaustion requirement. *Raia*, 954 F.3d at. Rather, "[g]iven BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Id.*; see also *United States v. Alam*, No. 15-20351, at 6 (E.D. Mich. Apr. 8, 2020) ("[T]his failure to exhaust cannot be excused, even in light of the COVID-19 pandemic."); *United States v. Eberhart*, No. 13-CR-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("Because defendant has not satisfied the exhaustion requirement, the court lacks authority to grant relief [based on COVID-19] under § 3582(c)(1)(A)(i)."). The Defendant's motion therefore must be denied on that basis alone.

## II. The Defendant Is Not Entitled to Compassionate Release

Compassionate release may only be granted based on "extraordinary and compelling reasons," consistent with the Sentencing Commission's policy statement

and the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13(1)(A), (2), (3); *Hamilton*, 715 F.3d 328, 327 (11th Cir. 2013). The relevant Policy Statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons." USSG § 1B1.13 cmt. n.1. The Defendant's arguments in support of his release appeal only generally to the pandemic and conditions in prison facilities nationwide, but fail to establish any extraordinary factors that are specific to his case sufficient to warrant this relief.

### A. The Defendant's Age and Health Are Not Extraordinary.

The only information provided in Defendant's motion that is specific to him relates to his age and medical conditions. Def.'s Mot. 7. Yet this information is not new to this Court, and has never been deemed extraordinary. At the time of sentencing, the Defendant reported to Probation suffering from various ailments, including hypertension, diabetes, hyperlipidemia, osteoporosis, chronic lower back pain, herniated disc, spondylolisthesis, right rotator cuff tear, and degenerative osteoarthritis, as well as taking a host of medications for these conditions. As the Defendant concedes, this Court had all of this information before it at the time of sentencing, and nevertheless saw fit to issue a custodial sentence of 84 months. Even

8

the Defendant does not now argue that he is so sick as to require compassionate release on the basis of his medical conditions or age, standing in isolation.

### B. The COVID-19 Pandemic Does Not Create Extraordinary Circumstances For This Defendant.

The second piece of the "extraordinary circumstances" argument, then, would fall into the "other reasons" category: the COVID-19 pandemic. As to this, the Defendant can offer only general statements about the impact on BOP facilities writ large, and the speculative harms that could be visited upon the Defendant *if* his facility was to experience an outbreak. Yet speculation is insufficient to support relief. *See* Order, *United States v. Mungarro*, E.D. Mich., No. 07-cr-20076 [Dkt. 605] (Apr. 22, 2020) ("The court will not release Defendant simply because she *may* contract COVID-19, and if she does, *may* experience more pronounced symptoms."); *Raia*, 954 F.3d 594 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release…"). In reality, the pandemic – while certainly extraordinary in its own right – is actually less prevalent in the Defendant's current location than at his home.

FCI Morgantown, where the Defendant is presently housed, has yet to report a single case of COVID-19, either among its inmates or its staff. BOP: COVID-19 Update, bop.gov/coronavirus/ (May 4, 2020). The entire state of West Virginia,

where FCI Morgantown is located, has reported a total of just 1,206 cases of the virus and 50 deaths. Coronavirus Disease 2019, dhhr.wv.gov/COVID-19/Pages/default.aspx (May 4, 2020). In contrast, Detroit City where the Defendant resided prior to his incarceration has now reported 9,386 cases of the virus, and recorded 1,085 deaths. Coronavirus – Michigan Data, Michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html (May 4, 2020). In the Defendant's case, the comparative risks of infection at his prison versus his home location actually counsel *against* release. Accordingly, the COVID-19 pandemic does not satisfy the "other reasons" category.

## CONCLUSION

For the foregoing reasons, the Defendant's motion should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
U.S. Attorney

/s/ Kathleen C. Cooperstein
Trial Attorney
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20530
Phone: (202) 957-2958
Email: Kathleen.Cooperstein@usdoj.gov

Dated: May 4, 2020

Certificate of Service

      I certify that on May 4, 2020 I electronically filed this brief for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send notification of such filing to the following: Anjali Prasad, Attorney for Defendant.

      <u>/s/ Kathleen C. Cooperstein</u>
Trial Attorney
United States Department of Justice
1400 New York Avenue, NW
Washington, DC 20530
Phone: (202) 957-2958
Email: Kathleen.Cooperstein@usdoj.gov